## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **HJERSTED FAMILY LIMITED PARTNERSHIP,** | ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) ) |
| | ) |
| **DEBRA DAVIS HALLAUER, et al.,** | ) ) |
| **Defendants.** | ) ) |

No. 06-2229-CM

### MEMORANDUM AND ORDER

Plaintiff Hjersted Family Limited Partnership brings this diversity action against defendants Debra Davis Hallauer and Vold, Morris & Hallauer, PA, n/k/a Hallauer Law Offices, PA.  The case comes before the court on defendants Debra Davis Hallauer and Hallauer Law Offices, PA's Motion for Summary Judgment (Doc. 65), and plaintiff's Motion for Partial Summary Judgment (Doc. 67). For the reasons below, the court grants in part and denies in part both motions.

### I.    Background

Defendants represented Norman Hjersted and his wife, Maryam Hjersted.  It is undisputed that, on or about February 20, 1997, defendants helped Norman Hjersted form the Hjersted Family Limited Partnership ("HFLP-Kansas") in Kansas.  At the time defendants established HFLP-Kansas, the two partners were Norman and his son, Lawrence Hjersted.  Both contributed capital to the partnership.  Acting on the erroneous advice of defendants, who believed that application of a tax rule known as the 80/20 rule might have adverse consequences on the contributions, Norman Hjersted executed a back-dated promissory note to HFLP-Kansas in the amount of $360,659.74.   By

its terms, this note bore interest at the rate of eight percent per annum and was payable on demand.

In late 1999 and into 2000, the Barber Emerson law firm assisted with a part gift–part sale transaction in which Norman Hjersted gave and sold his limited partnership interest in HFLP-Kansas to Lawrence Hjersted. Norman Hjersted died on April 28, 2001, apparently leaving Lawrence Hjersted unaware of the promissory note.

Lawrence Hjersted was appointed the executor of Norman's estate. The deadline for asserting claims against Norman Hjersted's estate was February 18, 2002. By the time a claim on the promissory note was made, this deadline had passed. The District Court of Leavenworth County, Kansas, ordered plaintiff's claim on the promissory note not to be paid from the probate estate, noting:

> [T]he court finds that the cases presented by the special administrator and the surviving spouse indicate that the lack of timely filing under the facts as presented (that is that even if Lawrence did not know of the existence of the note, he had constructive notice and/or should have known of its existence had reasonable diligence been exercised prior to the death of decedent), bar the filing of the claim.[1]

Plaintiff alleges that, despite repeated requests, defendants had refused to disclose HFLP-Kansas's business records—including the promissory note—citing attorney-client privilege and the need to obtain consents from, *inter alia*, Norman's widow, Maryam Hjersted. Lawrence was granted access to the records pursuant to a court order dated October 2, 2002. He subsequently discovered a copy of the note. On January 7, 2003, HFLP-Kansas submitted an untimely claim seeking payment on the note by the estate. On July 12, 2004, the probate court issued its written

---

[1] Although the probate court's decision on various claims made its way around the appellate courts of the State of Kansas, the ruling dismissing the promissory note claim was not a subject of these appeals. *In re Estate of Hjersted*, 135 P.3d 216 (Kan. 2006); *In re Estate of Hjersted*, 135 P.3d 202 (Kan. 2006); *In re Hjersted Revocable Trust*, 135 P.3d 192 (Kan. 2006).

order denying HFLP-Kansas's claim on the note as untimely.  (Doc. 75-2, Plaintiff Ex. L.)[2]

It is uncontested that Lawrence Hjersted, through his attorneys, requested that defendants disclose "all of [their] files pertaining to Norman," which included files relating to the partnership, estate and trust planning documents, and documents pertaining to assets transferred into Norman Hjersted's trust(s).

Plaintiff alleges that, in failing or refusing to disclose files related to the representation, particularly the promissory note, defendants: (1) committed legal malpractice; (2) breached a contract for legal services; (3) breached their fiduciary duty; (4) negligently supervised their employees; (5) converted plaintiff's property; and (6) acted with "intentional, wilful, malicious and with reckless disregard for the effect on [plaintiff,]" entitling plaintiff to punitive damages.  Plaintiff has subsequently abandoned its claim of negligent supervision.

Defendants filed this motion for summary judgment, suggesting several bases upon which they seek judgment as a matter of law.  They argue that (1) plaintiff lacks standing to bring its claims; (2) plaintiff's claims are barred by the statute of limitations, laches and/or waiver; (3) the note at issue is invalid or unenforceable due to mutual mistake or lack of consideration; (4) plaintiff's claim is barred by a superseding or intervening cause; (5) plaintiff's claim is barred by collateral estoppel; and/or (6) plaintiff fails to state a claim for negligent supervision or conversion.

Plaintiff filed a motion for partial summary judgment on defendants' affirmative defenses of comparative fault, mutual mistake, lack of consideration, equitable estoppel, collateral estoppel, and res judicata.  Plaintiff further moves the court to grant partial summary judgment eliminating

_____

[2]  In late July or early August 2003, all of the interests in HFLP-Kansas were sold, assigned and transferred to create the Hjersted Family Limited Partnership, a Nevada Limited Partnership ("HFLP-Nevada").  It was HFLP-Nevada that originally filed this action.  There is dispute concerning the difference and/or relationship between HFLP established under Kansas law ("HFLP-Kansas" or "HFLP"), and the Nevada partnership.

defendants' "look through" damages defense.

In a Memorandum and Order dated October 15, 2008, the court dismissed the case without ruling on the merits, but on reconsideration, vacated that order in a Memorandum and Order dated November 5, 2008. In its November 5, 2008 Memorandum and Order, which sets out a more detailed factual and procedural background, the court addressed the standing defense and found that plaintiff was not the real party in interest. Plaintiff's response sought substitution of HFLP-Kansas as plaintiff; arguing that substitution was proper under Rule 17 of the Federal Rules of Civil Procedure; and asserting that complete diversity of citizenship would exist if HFLP-Kansas was substituted as plaintiff. In a Memorandum and Order dated February 10, 2009, this court granted plaintiff's motion to substitute (Doc. 105), and now addresses the parties' arguments for summary judgment. To the extent the parties each seek summary judgment on the same issues, the court treats the arguments together.

## II.    Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The filing of cross-motions for summary judgment does not change the standard of review. *James Barlow Family Ltd. P'ship v. David M. Munson Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997) ("Where, as here, the parties file cross motions for summary judgment, we are entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts."). To the extent these

-4-

motions overlap, the court addresses the arguments together.

**III.   Discussion**

 **A.  Standing**

  Defendants assert that they did not create plaintiff, have never represented plaintiff, and have never had an attorney–client relationship with plaintiff.  Defendants then note that legal malpractice and breach of fiduciary duty claims are personal; they are generally not assignable or transferrable. *See Bank IV Wichita Nat'l Assoc. v. Arn Mullins Unruh Kuhn & Wilson*, 827 P.2d 758, 764 (Kan. 1992); Am. Jur. Assignments § 57 (2008).  Therefore, defendants assert that plaintiff's malpractice and breach of fiduciary duty and legal services contract claims, sounding either in contract or tort, are precluded.

  Defendants' claim that HFLP-Nevada lacked standing to pursue certain claims that belonged to HFLP-Kansas is largely moot, given the substitution of that party in this action.   Nevertheless, the court addresses the instant plaintiff's standing to raise the claims alleged in its complaint. Pursuant to Article III, to have standing, a plaintiff must demonstrate: (1) an injury in fact that is both concrete and particularized as well as actual or imminent; (2) an injury that is traceable to the conduct complained of; and (3) an injury that is redressable by a decision of the court.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Wyoming ex rel. Crank v. United States*, 539 F.3d 1236, 1241 (10th Cir. 2008).

  The court agrees with defendants that, generally, the tort claims of legal malpractice and breach of fiduciary duty asserted here are personal and nonassignable.  *Bank IV Wichita Nat'l Assoc.*, 827 P.2d at 764–65.  This general rule also appears in the provisions of the Kansas Revised Uniform Limited Partnership Act, K.S.A. § 56-1a402, and in the terms of the HFLP-Kansas' Limited Partnership Agreement.  As plaintiff, HFLP-Kansas has standing to raise these claims.

Additionally, while the remaining claims—for breach of contract, conversion, and negligent supervision—may be raised by an assignee or transferee, HFLP-Kansas is a proper party to raise them. Because it seeks relief for actual injury allegedly arising from defendants' conduct, the court finds that plaintiff has standing to raise the claims alleged in its complaint.

### B. Statute of limitations

The parties agree that the applicable statute of limitations period is two years as set out in Kan. Stat. Ann. § 60-513. However, they disagree as to the time plaintiff's causes of action accrued. Under Kansas law, the statute of limitations runs "from the time the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party." Kan. Stat. Ann. § 60-513.

Plaintiff asserts it first suffered injury as the result of defendants' negligence when the probate court issued its order on July 12, 2004, denying plaintiff's claim on the note against Norman Hjersted's estate. Plaintiff's complaint was filed on June 5, 2006—within two years of "the time the act giving rise to the cause of action first cause[d] substantial injury." *Id.*

Defendant, on the other hand, alleges that the limitations period began to run in October 2002 and had expired by the time plaintiff filed its petition. By that time, and at least by January 7, 2003, when he filed the untimely claim on the note against the estate, Lawrence Hjersted was aware of the note, was aware that the claim period in the probate estate had expired; was aware of the potential consequences of failing to have presented the claim during this period; and had already incurred attorney fees in an effort to obtain HFLP files and assert a claim.

The phrase "substantial injury" in Kan. Stat. Ann. § 60-513(b) has been construed to mean "actionable injury." *Roe v. Diefendorf*, 689 P.2d 855, Syl. ¶ 2 (Kan. 1984). In examining this

statute in the context of a legal malpractice action, Kansas courts have explained that:

> In general, a cause of action accrues, so as to start the running of the statute of limitations, as soon as the right to maintain a legal action arises. The true test to determine when an action accrues is that point in time at which the plaintiff could first have filed and prosecuted his action to a successful conclusion.

*See Kan. Pub. Employees Retirement Sys. v. Reimer & Koger Assoc., Inc.*, 936 P.2d 714, 719 (Kan. 1997) (citing *Pancake House, Inc. v. Redmond*, 716 P.2d 575, 579 (Kan. 1986)).

Actual damage is an essential element of plaintiff's tort-based claims. The court notes that the plaintiff's claims are based on the defendants' conduct in failing or refusing to produce files relating to its representation of HFLP. The claims are not based on the fact that plaintiff was unable to enforce the note against the estate. Nevertheless, defendants' allegedly negligent conduct caused injury which became reasonably ascertainable—indeed became certain—as of the date of the probate court's ruling denying the claim on the estate. It was only then that plaintiff's right to maintain a legal action arose. As a practical matter, had plaintiff asserted its interests prior to the ruling of the probate court, this court would have dismissed the claims. *See Berberich v. Payne & Jones, Chartered*, 3 F.Supp. 2d 1199 (D. Kan. 1998) (holding plaintiff's legal malpractice claim had not yet accrued under Kansas law where underlying dispute between clients and IRS—in which clients maintained they were entitled to relief—was still ongoing). Therefore, summary judgment is appropriate on the defendants' statute of limitations defense. For the same reasons, the court enters summary judgment against defendants on the affirmative defenses of laches and waiver. Defendants have abandoned their affirmative defense of equitable estoppel so the court will not address it.

### C. Validity of the Note

Defendants allege they are entitled to summary judgment because the note at issue is unenforceable due to mutual mistake or lack of consideration. Plaintiff argues, however, that

defendants have insufficient evidence to create a triable issue of fact on their lack of consideration or

mutual mistake defense.  Plaintiff claims it is entitled to summary judgment as to these affirmative

defenses, suggesting that (1) there was no mutual mistake; (2) even if there was, mutual mistake

renders a contract voidable, not void; and (3) there is no evidence that either party attempted to

avoid or terminate it.  Moreover, according to plaintiff, even if based on a mistake, there is no

evidence that the mistake materially affected the agreed-upon exchange or lack of consideration,

which is a required element of that defense.  The court concludes that there are genuine issues of

material fact concerning the intent of the parties in creating the note and the consideration

supporting it.  The court declines to grant summary judgment for either party on this basis.

### D. Superseding or intervening cause, comparative negligence

Plaintiff claims that it is entitled to judgment as a matter of law on defendants' comparative

fault defenses.  After arguing that defendants waived a comparative fault defense against plaintiff,

plaintiff argues that comparative fault is not appropriately considered where the specific event of

professional negligence alleged is not one to which plaintiff's own negligence contributed.  Plaintiff

attempts to analogize this case to several cases it cites for the proposition that comparative fault

principles apply to malpractice actions unless as a matter of law the client had no obligation to act on

his own behalf.  *See, e.g., Pizel v. Zuspann*, 795 P.2d 42 (Kan. 1990) *modified on other grounds by*

803 P.2d 205 (1990).  Plaintiff then alleges that, as a matter of law, "HFLP had no obligation to act

on its own behalf . . . because the uncontroverted facts demonstrate that HFLP had utterly forgotten

the existence of the [n]ote and failed to rediscover it."  (Doc. 68, at 14.)

In this case, plaintiff brings claims of breach of contract for legal services, breach of

fiduciary duty, and legal malpractice.  Comparative fault defenses apply only to claims sounding in

tort.  This court notes that, when the essential claim of the action is a breach of duty imposed by law

upon the attorney-client relationship and not of the contract itself, the action is in tort.  See *Pancake House, Inc. v. Redmond*, 716 P.2d 575, 578 (Kan. 1986).  However, the parties do not ask this court to determine the nature and scope of plaintiff's claims.  As to the claim for legal malpractice, defendants argue that the comparative negligence of plaintiff and Lawrence Hjersted should be considered here because, as a partner in HFLP, Lawrence Hjersted was charged with constructive knowledge of the note, and any negligence on the part of defendants therefore should be compared with Hjersted's/HFLP's negligence in "failing to present the claim in a timely manner."  *See E.F. Corp. v. Smith*, 496 F.2d 826 (10th Cir. 1974) (noting that, under Kansas law, knowledge of one partner is constructive knowledge of all members of partnership).

The court concludes that comparative fault principles should apply in this case.  Even assuming without deciding that Lawrence Hjersted and/or HFLP had knowledge of the note, the question of whether they acted negligently or failed to exercise due diligence is one of fact for the jury.

Defendants also seek to compare the fault of Barber Emerson, plaintiff's law firm, for delay in providing the releases necessary for disclosure of the defendants' files, and for failing to communicate and or/timely communicate with defendants.  The court finds that, as to the issue of comparative negligence, defendants have set forth specific facts showing that there is a genuine issue for trial.

Finally, defendant seeks to compare the fault of Norman Hjersted.  The court finds that defendants have not met their burden to establish there is any genuine issue of fact concerning the fault of Norman Hjersted, who was not living at the time that any of these alleged torts took place or causes of action otherwise accrued.

### E. Collateral Estoppel and Res Judicata

The defendants relied on the argument of collateral estoppel in an earlier motion for summary judgment. This court denied that motion, finding that the evidence presented failed to establish that the present issue was identical to any issue previously decided. In this motion, defendants provide the court with no reason to reconsider its original conclusion.

Under the doctrine of issue preclusion, "'[w]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *United States v. Botefuhr*, 309 F.3d 1263, 1282 (10th Cir. 2002) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)).

> Four elements must be demonstrated in order to trigger issue preclusion: "(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been fully adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action."

*Id.* (quotations omitted).

Here, defendants again argue that the state probate decision precludes relitigation of defendants' liability. Defendants characterize each of plaintiff's claims of damages as arising from defendants' failure to inform Lawrence Hjersted of the note. Because the state court held that Lawrence Hjersted had constructive knowledge of the note "and/or" did not exercise reasonable diligence, defendants argue that the question of liability is settled—in their favor and against plaintiff. However, the state court decision did not resolve defendants' liability. It resolved whether HFLP could make a belated claim on the promissory note against the probate estate. The court is still unwilling to make the leap of logic defendants seek. Defendants have not met their burden to show that a present issue is identical to one previously decided. Consequently, plaintiff's claims are not barred by issue preclusion at this time.

-10-

Plaintiff additionally argues that it is entitled to summary judgment as to defendants'
affirmative defense of res judicata.  Defendants have abandoned this defense, so the court does not
address the argument.

### F.  Negligent supervision and conversion claims

Finally, defendants argue that plaintiff fails to state a claim for negligent supervision or
conversion.  Plaintiff has elected to abandon its claim for negligent supervision.  That claim is
therefore dismissed.

Because the alleged conversion took place in Kansas, the viability of plaintiff's conversion
claim is governed by Kansas law.  *See Farmers State Bank v. Prod. Credit Assoc. of St. Cloud*, 755
P.2d 518, 523–24 (Kan. 1988).  This court has defined conversion as the unauthorized assumption or
exercise of the right of ownership over goods or personal chattels belonging to another to the
exclusion of the other's rights.  *Moore v. State Bank of Burden*, 729 P.2d 1205, 1210 (Kan. 1986);
*see also Carmichael v. Halstead Nursing Center, Ltd.*, 701 P.2d 934 (Kan. 1985).  A plaintiff
asserting a conversion cause of action must prove that the defendant intentionally exercised
wrongful dominion or control over property of the plaintiff that so severely interferes with the
plaintiff's right to control the property that the court may justly require the defendant to pay full
value of the property.  *Rodgers v. Crum*, 215 P.2d 190, 193 (Kan. 1950).  A claim for conversion is
barred where the owner of property consents to the defendant's possession, or where the property
has been abandoned.  *Geer v. Cox*, 242 F. Supp. 2d 1009, 1022–23 (D. Kan. 2003); *Rodgers*, 215
P.2d at 193.

Here, plaintiff does not offer evidence that defendants "assume[d] a right of ownership" over
the note's value, or possessed the note against the consent of the owner.  Plaintiff nevertheless cites
caselaw for the proposition that its claim is actionable.  The court finds that these cases are

-11-

distinguishable. *Temmen v. Kent-Brown Chevrolet Co.*, 605 P.2d 95, 99 (Kan. 1980) (disallowing action for conversion where employer withheld money from employee's wages without written authorization); *Nelson v. Hy-Grade Const. & Materials, Inc.*, 527 P.2d 1059, 1062 ( Kan. 1974) (permitting action for conversion where, having entered oral but not written contract, buyer took goods without seller's authorization); *Henry v. Atchison, T. & S. Ry. Co.*, 109 P. 1005, 1007 (Kan. 1910) (noting that although proper action not for conversion, plaintiff could recover value of goods where railway company, who transported goods to destination and notified owner to retrieve them, declined to turn them over once the owner arrived, demanded the delivery, and a flood damaged the goods the next day).

In this case, plaintiff appears to confuse defendants' possession of the note—merely the evidence of a debt—with the value of the debt itself. "An action will not lie for conversion of a mere debt or chose in action. Hence, where there is no obligation to return identical money, but only a relationship of debtor and creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor." 18 Am. Jur. 2d, Conversion § 10; *see Baker, Adm'r v. Brial*, 341 P.2d 987 (1959); 89 C.J.S. Trover & Conversion § 23; Prosser, Cases and Materials on Torts, at 95–96 (6th ed. 1976). The relationship between the parties here makes the cause of action even less compelling here. When viewed most favorably to plaintiff, there is no evidence that defendants assumed or exercise rights of ownership over the note's value. On the uncontroverted facts presented, plaintiff does not state a claim for conversion. This court therefore grants summary judgment in favor of defendants on plaintiff's conversion claim.

### G.  Damages Defense

Defendants assert that plaintiff's damages are precluded or reduced because the note was not paid for by Lawrence as part of the transfer of HFLP partnership assets from Norman to him, and so

enforcement would constitute a windfall.  Plaintiff seeks summary judgment prohibiting defendants from defending this case based on the idea that plaintiff's damages are "tied to Lawrence [Hjersted]'s economic loss."  Plaintiff's request is an evidentiary one, rather than one that would entitle it to judgment as a matter of law.   For purposes of summary judgment, plaintiff has the burden to prove, as an essential element of its claims, actual damage caused by defendants' negligence. *See Miller v. Sloan, Listrom, Eisenbarth, Sloan & Glassman*, 978 P.2d 922 (Kan. 1999). Damages are questions of fact, and facts are in dispute.  The court therefore denies summary judgment.

The court is uncertain how its order and the intervening passage of time affect the parties' motions seeking to exclude expert testimony (Docs 71, 73).  These motions were denied as moot in the court's Memorandum and Order dated October 15, 2008, which was later vacated.  To the extent these motions were resurrected by the order on reconsideration, the court again denies the motions as moot.  In light of this court's rulings on reconsideration of the motions for summary judgment and partial summary judgment, however, the parties may wish to refile their motions or file new motions concerning the admissibility of expert testimony.  If so, the parties are directed to do so within 14 days.  Responses should be filed within 14 days of any such motion being filed.  Replies should be filed within 14 days of any response.  The motions should indicate whether a hearing is requested.

**IT IS THEREFORE ORDERED** that defendants' Motion for Summary Judgment (Doc. 65) is granted in part and denied in part as set out above.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Partial Summary Judgment (Doc. 67) is granted in part and denied in part as set out above.

**IT IS FURTHER ORDERED** that the parties' motions seeking to exclude expert testimony (Docs 71, 73) are denied as moot.

-13-

**IT IS FURTHER ORDERED** that, should the parties wish to file motions concerning the admissibility of expert testimony, the parties are directed to do so within 14 days.  Responses should be filed within 14 days of any such motion being filed.  Replies should be filed within 14 days of any response.  The motions should indicate whether a hearing is requested.

Dated this 31st day of March, 2009, at Kansas City, Kansas.

<u>**s/ Carlos Murguia**</u>
**CARLOS MURGUIA**
**United States District Judge**